An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-593

NORTH CAROLINA COURT OF APPEALS

Filed: 6 January 2015

STATE OF NORTH CAROLINA

    v.

CHRISTOPHER ALLEN REESE,
    Defendant.

Guilford County
Nos. 03 CRS 96775-88

Appeal by defendant from judgments entered 18 September 2013 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 20 October 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Kevin P. Bradley, for defendant-appellant.*

DIETZ, Judge.

Defendant Christopher Allen Reese appeals from his convictions and sentences on thirteen counts of statutory rape and thirteen counts of taking indecent liberties with a child. Reese argues on appeal that he was denied his constitutional right to self-representation and that the trial court improperly advised him of the risks of testifying at trial. For the reasons that follow, we find no error.

## Facts and Procedural History

On 3 November 2003, Reese was indicted on fourteen counts of statutory rape and fourteen counts of taking indecent liberties with a child. On 4 October 2005, a jury found Reese guilty of all charges, and the court sentenced him to six consecutive terms of 288-355 months imprisonment. Reese appealed to this Court, and we granted him a new trial on the ground that his trial attorney had an impermissible conflict of interest. *State v. Reese*, 187 N.C. App. 510, 653 S.E.2d 256 (2007) (unpublished).

The State began a new trial against Reese on 9 September 2013. Reese had a court-appointed attorney for this second trial. At the start of the new trial, before jury selection began, Reese twice moved to represent himself but the trial court ignored his requests. At the end of the day, still during jury selection, Reese again moved to represent himself. The trial court briefly questioned Reese about his desire to represent himself and made note that he is on his eighth attorney for this case. The trial court told Reese to consider his request overnight and stated that the court would address the issue in the morning.

The next morning, the trial court conducted a thorough inquiry to determine whether Reese's desire to waive his right to counsel and represent himself was knowing, intelligent, and voluntary as required under N.C. Gen. Stat. § 15A-1242 (2013). During this lengthy colloquy, Reese repeatedly expressed a desire to represent himself, but also hedged by stating that he did not have discovery and that he would "find it hard to represent [himself] with no discovery." The trial court informed Reese that if he were allowed to represent himself, the trial would not be delayed despite his discovery claim:

> THE COURT: Do you understand this Court is not going to continue this trial based upon that statement from you?
>
> THE DEFENDANT: I do not understand that.
>
> THE COURT: It means that your statement that it's hard to represent yourself with no discovery is not a basis for which this Court, if the Court allows you to represent yourself, will continue this trial from this day. Do you understand that?
>
> THE DEFENDANT: No, I do not understand that.

The trial court also questioned Reese regarding his understanding that the court was not required to reappoint counsel if Reese later changed his mind:

> THE COURT: Do you understand that if I allow you to represent yourself and during the course of the trial you should change your

mind and request that [court-appointed counsel] re-enter the role as your counsel, that that is unlikely to occur?

THE DEFENDANT: Excuse me? No, I do not understand that.

THE COURT: Do you understand that if I grant your request to allow you to represent yourself, and if, during the course of the trial, you change your mind again and decide that you want [court-appointed counsel] to represent you, it is unlikely that the Court will allow that.

THE DEFENDANT: I believe under the sixth amendment that at some point in time if I'm unable to proceed, co-counsel can be -- can take over.

THE COURT: Again, I'm asking you, do you understand that?

THE DEFENDANT: No.

Reese continued to assert that he did not understand this issue stating, "[b]ecause, like I said, the sixth amendment, if I'm unable to proceed, standby counsel is supposed to take over. So if I say that, then I'm agreeing that if I'm unable to proceed, I'm just unable to proceed." When questioned further on his understanding of this issue, Reese stated,

THE DEFENDANT: No. My understanding is if at some point in time I cannot represent myself, standby counsel should be taking over. And I say that because of the fact if I get the discovery and I haven't had a chance to go all the way through it, at some point in time, if I can't go any further,

what am I to do? Because co-counsel can't take over, is what you're saying.

Now, you ask me do I understand that, and I know somewhere in the constitution that doesn't agree with what you're saying. So I can't say that I understand it when I know in the constitution it's different. And I can't say that I understand it when I know that if I get the discovery today, there may be witnesses today that I got five seconds to go through and find something wrong, and then I can't sit up and say, well, I need a private investigator to go check this out because of the fact I can't stop or delay the trial. But at the same time, co-counsel -- well, standby counsel can't take over and do anything about it. That hinders me from defending myself.

THE COURT: If I -- is it correct that you are of the opinion that if at some point during the trial, while representing yourself, you can't continue to represent yourself, then you believe that standby counsel should be appointed to represent you?

THE DEFENDANT: I believe that if I'm not allowed to go any further, standby counsel should be able to take over, but --

. . . .

So, no -- and like I said, a part of the fifth and sixth amendment, if I can't proceed, you're telling me that I can't -- standby counsel can't take over. But in the fifth and sixth amendment, under one of the statutes it says that if I'm unable to proceed, standby counsel should be allowed to take over.

. . . .

THE COURT: And you anticipate that if you're allowed to represent yourself, at some point during the trial before the jury reaches a verdict, there will be a problem where you believe the standby counsel should be allowed to take over the representation of you. Is that correct?

THE DEFENDANT: That is my interpreting of the -- that is my interpretation of the constitution.

THE COURT: And is that what you believe?

THE DEFENDANT: I believe the constitution, yes.

Finally, toward the end of this lengthy colloquy, Reese again stated that he expected problems at trial due to his lack of discovery, and the trial court again questioned him on his understanding of the consequences of self-representation.

THE COURT: And if there's a problem, you believe then that standby counsel should be reappointed to represent you and take over the trial in representing you; is that correct?

THE DEFENDANT: That is my understanding, and I say that not wanting [my counsel] to take over my case, and I say that reserving my right to represent myself.

After finishing its colloquy with Reese, the trial court made numerous findings of fact regarding Reese's motion to represent himself. The court found that Reese understood he had a right to counsel and that he understood the possible range of

punishments. The court also found that Reese believed if he could no longer represent himself "that standby counsel, upon his request, should be appointed to represent him." The trial court then found that:

> [T]he defendant, if allowed to represent himself, is of the opinion that at some point during the trial a problem will arise.
>
> Next, that if he is allowed to represent himself, and if, at some point during the trial, a problem arises that he is unable to adequately deal with, he is of the opinion that standby counsel should be appointed as trial counsel and allowed to take over the defense and representation of the defendant.

From these findings, the trial court concluded that Reese was clearly advised of his right to counsel, that he comprehended the nature of the charges and proceedings and the range of permissible punishments, and that he voluntarily waived his right to counsel. But the court also concluded that Reese did not intelligently waive his right to counsel because he did not understand the consequences of his decision—specifically, the fact that Reese would not have a right to have counsel reappointed if he changed his mind. The trial court then denied Reese's motion to represent himself and Reese proceeded to trial represented by his court-appointed lawyer.

During the trial, the two juvenile victims testified against Reese, describing the sexual intercourse and other sex acts that occurred. After the State rested, the trial court asked Reese whether he intended to testify on his own behalf. When he answered yes, the trial court engaged in another colloquy questioning Reese on his understanding of his right not to testify. The trial court discussed with Reese that the State would get the final closing argument if he testified and informed him that some scholars find that having the final argument offers some advantage. The court also informed Reese that not testifying does not create a presumption of guilt and that the court would instruct the jury as such. The trial court then asked:

> THE COURT: And while I do not know, but if you have any prior criminal convictions for an offense which you could have received 60 or more days' confinement, then the district attorney may ask you if you've been convicted of such offense on cross-examination. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And the purpose of that would be to attempt to impeach your testimony by the state. Do you understand that?
>
> THE DEFENDANT: Yes.

The trial court stated that it would ask Reese again if he wished to testify or to present any evidence on his behalf, but that he was "free to privately consult with [his] attorney" before answering. Reese stated that he did not need to speak with his attorney and that he did not intend to testify on his own behalf. Reese did not present any evidence at trial.

The jury convicted Reese of all charges, but the trial court set aside the verdict on one count of statutory rape. He was sentenced to two consecutive sentences of 288-355 months imprisonment with credit for 3,050 days confinement prior to the date of judgment for the statutory rape convictions, and fourteen consecutive sentences of 19-23 months imprisonment for his taking indecent liberties with a child convictions. Reese timely appealed.

**Analysis**

**I. Reese's Request to Represent Himself**

Reese first argues that the trial court erred in denying his motion to represent himself. "Criminal defendants have a constitutional right to the assistance of counsel in conducting their defense. Implicit in this right to counsel is the constitutional right to refuse the assistance of counsel and proceed *pro se*." *State v. Leyshon*, 211 N.C. App. 511, 514-15,

710 S.E.2d 282, 286 (2011) (citations and internal quotation marks omitted). This Court reviews a claim for denial of the right to self-representation *de novo*. *Id.*

Section 15A-1242 of the General Statutes describes the inquiry that trial courts must undertake when a defendant requests to represent himself:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242. Our Supreme Court has held that the inquiry required by N.C. Gen. Stat. § 15A-1242 satisfies the constitutional requirement to ensure that a defendant's decision to waive the right to counsel is knowing, intelligent, and voluntary. *State v. Thomas*, 331 N.C. 671, 674, 417 S.E.2d 473, 476 (1992).

"In order to preserve both the right to counsel and the right to self-representation, a trial court must proceed with care in evaluating a defendant's expressed desire to forgo the representation of counsel and conduct his own defense." *State v. Wheeler*, 202 N.C. App. 61, 67, 688 S.E.2d 51, 55 (2010) (internal quotation marks omitted). Importantly, of the two rights, "the right to counsel is preeminent and hence, the default position." *Id.* at 68, 688 S.E.2d at 56. Thus, "[w]here the two rights are in collision, the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless." *Tuitt v. Fair*, 822 F.2d 166, 174 (1st Cir. 1987).

Here, the trial court did not err by denying Reese's request to represent himself. The Court's colloquy with Reese concerning his desire to represent himself lasted 90 minutes. During that time, Reese repeatedly stated that he did *not* understand some of the basic consequences of waiving counsel. Most significantly, Reese refused to acknowledge that his decision to proceed *pro se* operated as a potentially permanent waiver of his right to counsel. Reese insisted that, if he found he was unable to adequately represent himself at trial, standby counsel could "take over."

This is wrong. A defendant who chooses to represent himself does not have a *right* to standby counsel—the decision to provide standby counsel is in the trial court's discretion. N.C. Gen. Stat. § 15A-1243 (2013); *State v. Brincefield*, 43 N.C. App. 49, 52, 258 S.E.2d 81, 83 (1979). Similarly, if a defendant begins to represent himself but later decides he needs the assistance of counsel, he does not have a *right* to have counsel reappointed—again, that decision is in the trial court's discretion. *See State v. Rogers*, 194 N.C. App. 131, 139, 669 S.E.2d 77, 83 (2008) (indicating that a trial court's denial of defendant's motion to withdraw waiver of right to counsel is reviewed for abuse of discretion).

Given Reese's confusion concerning these key consequences of his decision to represent himself, the trial court properly concluded that Reese did not understand and appreciate the consequences of his decision. As a result, the court did not err in denying Reese's request to waive his constitutional right to counsel and proceed *pro se*.

## II. Reese's Right to Testify

Reese next argues that the trial court erred in advising him of the consequences of choosing to testify on his own behalf.

The North Carolina Supreme Court has "never required trial courts to inform a defendant of his right to testify or to make an inquiry on the record regarding his waiver of the right to testify." *State v. Smith*, 357 N.C. 604, 618, 588 S.E.2d 453, 463 (2003). However, trial courts are not prohibited from doing so, and our Supreme Court has upheld inquiries by the trial court exercised as "an abundance of caution." *State v. Carroll*, 356 N.C. 526, 533, 573 S.E.2d 899, 905 (2002).

Here, Reese argues that the trial court focused only on the reasons why *not* to testify and that this one-sided approach interfered with his decision-making and his counsel's ability to give advice. But Reese's counsel was sitting beside him for this entire discussion and was actively consulting with his client. At one point, when Reese expressed a desire to submit an affidavit rather than testifying, Reese and his counsel engaged in a private discussion that lasted long enough that it is reflected in the trial transcript with the notation, "Whereupon, there was a pause in the proceedings." In short, Reese has not shown either that the court interfered with his right to choose whether to testify or with his right to receive advice from counsel.

Reese also argues that the court's discussion of the State's right to cross-examine Reese about "prior convictions" might have led Reese to mistakenly conclude that the State could ask about his 14 convictions of rape and indecent liberties in his first trial (which was set aside on appeal). But nothing in the record indicates that Reese actually believed that his first trial was a "prior conviction" that could be used against him if he testified. And again, Reese's counsel was sitting beside him during this discussion and could have provided Reese with more details or clarification if he needed it.

In sum, Reese has not shown that the trial court's discussion of the consequences of testifying improperly interfered with his decision to testify or deprived him of the assistance of counsel.

## Conclusion

The trial court did not err in denying Reese's request to represent himself and in discussing with Reese, in the presence of his counsel, the consequences of the decision to testify in his own defense.

NO ERROR.

Chief Judge McGEE and Judge STEPHENS concur.

Report per Rule 30(e).